**Juliette A. TICHON, Plaintiff,**

**v.**

**John F. HARDER, Acting Commissioner of Welfare of the State of Connecticut; Charles J. Sheehan, Agency Personnel Administrator of the Department of Welfare of the State of Connecticut; Alice H. Sheahan, individually and as District Director of the New Haven District of the Department of Welfare of the State of Connecticut; Aldean E. Painter, individually and as Program Supervisor, Division of Child Welfare, Department of Welfare of the State of Connecticut; and Robert Budney, individually and as Case Supervisor, Division of Child Welfare, Department of Welfare of the State of Connecticut, Defendants.**

**Civ. No. 13605.**

United States District Court,
D. Connecticut.

Feb. 9, 1970.

Charles A. Pulaski, Jr., Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for plaintiff.

Robert K. Killian, Atty. Gen., F. Michael Ahern, Robert L. Hirtle, Jr., Asst. Attys. Gen., Hartford, Conn., for defendants.

## RULING ON MOTION FOR A TEMPORARY INJUNCTION

ZAMPANO, District Judge.

The plaintiff, Juliette A. Tichon, instituted this action for injunctive relief and damages after she was notified that her position as a probationary employee of the Connecticut Welfare Department was to be terminated. She claims that

the discharge from employment violates her rights under the Constitution and under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985(3).

Initially the Court signed a temporary restraining order and scheduled a hearing on the plaintiff's motion for a temporary injunction. At the conclusion of the hearing, the Court vacated the restraining order and reserved opinion on the request for injunctive relief. The parties now having filed briefs and oral arguments having been heard, the matter of the temporary injunction is ripe for decision.

On June 10, 1969, the plaintiff graduated from Southern Connecticut State College where she majored in social welfare. She obtained employment with the Connecticut Welfare Department on June 27, 1969, and was assigned to the Division of Child Welfare as a Case Worker I, a classification for one who receives training in and performs social case work of a gradually increasing responsibility under close supervision. As a new state employee she was required to serve a probationary "working test" period of six months from the date of her appointment. 5 Conn.Gen.Stats. § 230. On December 11, 1969, the plaintiff received a written notice signed by the Agency Personnel Administrator, defendant Charles Sheehan, informing her that she was to be discharged on December 25, 1969, because of her "unsatisfactory work and judgment." Several conferences with various members of the Welfare Department proved fruitless, and this suit followed.

■ It is fundamental that the award of a preliminary injunction restraining state action is an extraordinary remedy which should be granted only upon a clear showing of probable success at trial and possible irreparable injury. Checker Motors Corporation v. Chrysler Corporation, 405 F.2d 319, 323 (2 Cir. 1969). The Court is of the opinion the plaintiff has failed to sustain her burden of proof in both respects and, therefore, the motion for a preliminary injunction must be denied.

■ In rather vague, unrefined terms, the plaintiff first complains her discharge was due to the personal bias of her immediate supervisor, in violation of equal protection. However, she expressly disclaimed in open court that she was discriminated against by reason of her "race, color, creed, religion, or national origin." Compare, Birnbaum v. Trussell, 371 F.2d 672 (2 Cir.1966). Apparently the source of the difficulty was a personality conflict between Miss Tichon and her supervisor. Since the plaintiff failed to prove that her supervisor applied a different standard of performance to her as opposed to other probationary employees in her category, her equal protection argument is rejected.

■ The plaintiff next asserts she was denied substantive due process because of the arbitrary, capricious, and factually inaccurate reasons given for her unsatisfactory service rating. The Court disagrees. Sufficient cause existed for her supervisor's recommendation that the plaintiff not be considered for permanent employment. The reasons supporting his determination were set forth in a comprehensive evaluation report which was submitted to a hierarchy of three different supervisors for review before the final decision to release the plaintiff was made. Under the facts of this case substantive due process did not require more.

■■ The plaintiff's contention that procedural due process requires a formal hearing and a right to appeal upon notice of discharge merits more serious attention. A starting point is found in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), where the Supreme Court stated:

"Due Process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. * * *

Therefore, * * * it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. * * * The nature of the alleged right involved * * * must be taken into account.

The nature of the right involved in the instant case concerns fair play in public employment. A "permanent" public employee in this state has substantial rights by statute upon discharge, including a formal hearing and appeal rights. 5 Conn.Gen.Stats. § 202. However, a probationary employee is not accorded these rights and may be removed if "in the opinion of [the] appointing authority, the working test indicates that such employee is unable or unwilling to perform his duties so as to merit continuance in such position * * *." 5 Conn.Gen.Stats. § 230. Thus the plaintiff had no statutory rights beyond the procedures followed in her case.

■ It seems clear, also, that no federally protected rights have been violated here. Although the Supreme Court has warned that to generalize "that there is no constitutionally protected right to public employment is to obscure the issue;" Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1952), it has also stressed that "to acknowledge that there exist constitutional restraints upon state and federal governments in dealing with their employees is not to say that all such employees have a constitutional right to notice and a hearing before they can be removed." Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In cases analogous to the present one, the courts have uniformly held that a probationary employee, in the absence of legislation, is not entitled to the protective procedures accorded a career or permanent employee. Jaeger v. Freeman, 410 F.2d 528 (5 Cir.1969); Medoff v. Freeman, 362 F.2d 472 (1 Cir.1966); Morris v. Gantz, Civ. No. 13,044 (D.Conn.1969); Parker v. Board of Education, 237 F. Supp. 222 (D.Md.1965), aff'd 348 F.2d 464 (4 Cir.1965), cert. denied, 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966). The reasoning of these cases controls here.

■ In addition, the plaintiff has failed to demonstrate the possibility of irreparable harm. No doubt it was a severe psychological blow for a young woman just embarking upon her chosen career to be dismissed for unsatisfactory work and judgment. But there has been no showing that she is unable to secure other employment in the field of social work. Indeed it is common knowledge that today's social problems have created a broad spectrum of different opportunities in the field of social welfare which are crying out for applicants. It seems likely that, despite this recent unpleasantness on her first job, the plaintiff will find suitable employment immediately. Moreover, if the plaintiff should prevail at trial she will be adequately recompensed and protected by an order reinstating her with back pay. Lastly, the plaintiff's fears that her admission to college for postgraduate work will be seriously affected are unsupported by any evidence presented to this Court.

In the final analysis, there would be greater hardships and inequities for the State if this injunction were granted than there are for the plaintiff when it is not. Among other things, the State would be required to keep in its employ, in a highly sensitive area of social work, a person who is regarded as not qualified by state officials with long experience.

Accordingly, the motion for a temporary injunction is denied.