No. 72–1409. LOCAL UNION 1791, UNITED MINE WORKERS OF AMERICA, ET AL. *v.* McGUIRE SHAFT & TUNNEL CORP. ET AL. Temp. Emerg. Ct. App. Certiorari denied. 

MR. JUSTICE DOUGLAS, dissenting.

We are asked to review a decision of the Temporary Emergency Court of Appeals holding that § 210 (a) of the Economic Stabilization Act of 1970,[1] 84 Stat. 799, as amended, 85 Stat. 748, 12 U. S. C. § 1904, Note (1970 ed., Supp. II), overrides the anti-injunction provisions of

---

[1] That section provides:

"Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages."

the Norris-LaGuardia Act,[2] 47 Stat. 70, 29 U. S. C. § 101 *et seq.*, and permits a district court to enjoin a work stoppage in violation of regulations of the Pay Board.

On January 14, 1972, respondent construction companies entered into a collective-bargaining agreement with the United Mine Workers of America providing for a wage increase in excess of 18%. In accordance with the Economic Stabilization Act, this agreement was submitted to the Pay Board for approval, but the Board authorized an increase of only 9.54%. Subsequently, employees of the construction companies, members of three different locals of the United Mine Workers, went out on strike in support of their demand for a wage increase as provided by the agreement. Pickets soon appeared at five coal mines operated by two other respondents, and the miners honored the picket lines.

The four employers affected by the work stoppages immediately sought preliminary injunctions from the District Court. The District Court issued the injunctions, and the Temporary Emergency Court of Appeals affirmed.[3] 475 F. 2d 1209. It determined that the work stoppages constituted a violation of § 1 (a) of Executive

---

[2] Section 1 of the Norris-LaGuardia Act provides:

"That no court of the United States, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this Act; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this Act."

Section 4 specifies acts which may not be enjoined, including "[c]easing or refusing to perform any work or to remain in any relation of employment."

[3] The District Court also concluded that the strike violated provisions of the collective-bargaining agreement and could be enjoined under *Boys Markets, Inc.* v. *Retail Clerks Union, Local 770,* 398 U. S. 235. The Court of Appeals did not reach this issue.

Order 11640, which provides that "no person shall, directly or indirectly, . . . use any means to obtain payment of wages and salaries in any form, higher than those permitted hereunder . . . ." 37 Fed. Reg. 1214. It also determined that the stoppages constituted a violation of Pay Board Reg. § 201.17 (c), which provided that it shall be a violation of Pay Board regulations to "[i]nduce, solicit, encourage, force, or require, or attempt to induce, solicit, encourage, force or require, any other person to pay or to receive any portion of a wage and salary increase not authorized by such regulations or Pay Board decision . . . ." 6 CFR § 201.17 (c) (1972). The court concluded that respondents were persons "suffering legal wrong" within the meaning of § 210 (a) of the Economic Stabilization Act of 1970 and were thereby entitled to injunctive relief. As to petitioners' claim that the Norris-LaGuardia Act barred injunctive relief against a union work stoppage in an action brought by an employer,[4] the court stated:

> "In light of the importance of the Economic Stabilization Program to economic welfare of the United States, the Norris-LaGuardia Act must be interpreted to accommodate the overriding Congressional intent expressed in the Economic Stabilization Act. Such accommodations have been made in the past when the provisions of the Norris-LaGuardia Act conflicted with other specific intentions of Congress." 475 F. 2d, at 1215.

Heretofore, this Court has recognized implicit exceptions to the anti-injunction provisions of the Norris-LaGuardia Act only when there was an unavoidable clash

---

[4] Petitioners concede that the Norris-LaGuardia prohibitions do not apply in Government suits to enforce the Economic Stabilization Act. See § 209 of the Act, 85 Stat. 748.

with other *labor* legislation. See, *e. g., Boys Markets, Inc.* v. *Retail Clerks Union, Local 770,* 398 U. S. 235 (§ 301 of the Labor Management Relations Act); *Brotherhood of Railroad Trainmen* v. *Howard,* 343 U. S. 768. We have stated before that "the Norris-LaGuardia Act's ban on federal injunctions is not lifted because the conduct of the union is unlawful under some other, nonlabor statute." *Order of Railroad Telegraphers* v. *Chicago & N. W. R. Co.,* 362 U. S. 330, 339. See also *Brotherhood of Railroad Trainmen* v. *Chicago R. & I. R. Co.,* 353 U. S. 30, 42. The unmistakable mandate of the Norris-LaGuardia Act is to preclude the federal courts from interfering with peaceful labor disputes by resort to "objective tests." See *Order of Railroad Telegraphers* v. *Chicago & N. W. R. Co., supra,* at 336; *Milk Wagon Drivers' Union* v. *Lake Valley Farm Products, Inc.,* 311 U. S. 91, 101. Although the Economic Stabilization Act affects wages, it is clear to me that it falls within the area of general economic legislation rather than the narrow scope of "labor legislation" as that concept is used in our prior decisions.

Moreover, even when we have carved out an exception to the Norris-LaGuardia Act to accommodate it with later, more specific labor legislation, we have circumscribed the courts' discretion to award injunctive relief. In *International Association of Machinists* v. *Street,* 367 U. S. 740, 772–773, we stated:

> "The Norris-LaGuardia Act . . . expresses a basic policy against the injunction of activities of labor unions. . . . [T]he policy of the Act suggests that the courts should hesitate to fix upon the injunctive remedy for breaches of duty owing under the labor laws unless that remedy alone can effectively guard the plaintiff's right."

Petitioners contend that private injunctions are not a necessary part of the enforcement scheme of the Economic Stabilization Act, which includes provisions for governmental enforcement, supplemented by private actions for damages.

Finally, § 210 (a) of the Economic Stabilization Act provides for "appropriate relief." Petitioners argue that the word "appropriate" must be construed to encompass the ordinary constraints of federal equity jurisprudence, thus precluding private suits for injunctive relief against a union in a labor dispute.[5] See *Hecht Co.* v. *Bowles,* 321 U. S. 321. They buttress this argument with the assertion that the legislative history of the Act gives no indication that § 210 (a) was meant to override the anti-injunction provisions of the Norris-LaGuardia Act.

To my mind, this case presents substantial questions that deserve consideration by this Court. The decision below is a clear extension of the accommodation doctrine as it has developed in this Court and threatens to erode the Norris-LaGuardia Act. We hardly can conclude that wage and price controls are merely a specter of the past. I would grant the petition for a writ of certiorari and set the case for oral argument. I would not without impelling legislative reasons make the Norris-LaGuardia Act—once the pillar of labor strength—a mere ghost to be driven hence by the slogan "stabilization" and made a mockery by financial aggrandizement.

---

[5] The Government contended below, as *amicus curiae,* that the dispute between the parties does not come within the Norris-LaGuardia Act's definition of "labor dispute," 29 U. S. C. § 113 (c).