EXXON CORPORATION,
Plaintiff-Appellant,

Ad Hoc Committee to Save Small
Refiners, Amicus Curiae,

v.

FEDERAL ENERGY ADMINISTRA-
TION and Frank G. Zarb,
Defendants-Appellees,

Ashland Oil, Inc., Intervenor-Appellee,

and

Independent Refiners Association of
America, Intervenor-Appellee.

MARATHON OIL COMPANY,
Plaintiff-Appellant,

Ad Hoc Committee to Save Small
Refiners, Amicus Curiae,

v.

FEDERAL ENERGY ADMINISTRA-
TION and Frank G. Zarb, Adminis-
trator, Defendants-Appellees,

Ashland Oil, Inc., Intervenor-Appellee,

Independent Refiners Association of
America, Intervenor-Appellee,

Long Island Lighting Company et al.

Nos. 3–5, 6–8.

Temporary Emergency Court
of Appeals.

April 21, 1975.

Rehearings and Rehearings En Banc
Denied June 6, 1975.

William H. Allen, Washington, D. C., with whom John A. Hodges of Covington & Burling and Robert L. Norris, Jr., Houston, Tex., were on the brief for plaintiff-appellant Exxon Corp.

Joseph A. Califano, Jr., Washington, D. C., with whom Jerry L. Shulman and Peter B. Hamilton of Williams, Connolly & Califano, Washington, D. C., were on the brief, as amicus curiae ad hoc Committee to Save Small Refiners.

Patricia N. Blair, Atty., Dept. of Justice, with whom Carla A. Hills, Asst. Atty. Gen., New York City, and Stanley D. Rose, Atty., Dept. of Justice, were on the brief, for defendants-appellees.

Fred W. Drogula, Washington, D. C., with whom David Ginsburg and Peter H. Rodgers of Ginsburg, Feldman & Bress, Washington, D. C., and Arloe W. Mayne, Ashland, Ky., of counsel, were on the brief, for intervenor-appellee Ashland Oil, Inc.

Edwin Jason Dryer, Washington, D. C., for intervenor-appellee Independent Refiners Association of America.

George Blow, Washington, D. C., with whom Kent B. Hampton, Gen. Counsel, John L. Oberdorfer, Gail F. Borden of Patton, Boggs & Blow, Washington, D. C., and Ralph S. Spritzer, Philadelphia, Pa., of counsel, were on the brief for plaintiff-appellant Marathon Oil Co.

John J. Adams, Washington, D. C., with whom Arnold H. Quint of Hunton, Williams, Gay & Gibson, Washington, D. C., George C. Freeman, Jr., and Allen C. Barringer of Hunton, Williams, Gay & Gibson, Richmond, Va., were on the brief, for amicus curiae Long Island Lighting Co., Public Service Electric and Gas Co. and Consolidated Edison Co. of New York, Inc.

Before HASTIE, CHRISTENSEN and HASTINGS, Judges.

CHRISTENSEN, Judge:

 To reach the merits of these appeals involving denial of applications for preliminary injunctions below, we again would have to surmount a jurisdictional obstacle already recognized with reference to the absence of certification under 28 U.S.C. § 1292(b).[1]

Both of the above-entitled cases now before us involve here the same jurisdictional problem and essentially the same issues on the merits. Each appellant has asked us to grant an injunction pending appeal—in the case of Marathon "during the pendency of said appeal" and in the case of Exxon "pending its appeal". Otherwise, there has been filed directly with us no application for an injunction either preliminary or permanent, nor have the trial courts certified here any constitutional issues or interlocutory appeals.

Appellants are seeking to review orders of district courts denying motions for preliminary injunction and to certify a substantial constitutional question with reference to the "entitlement program" of the Federal Energy Administration.[2]

The jurisdictional problem arises from § 211(d)(2) of the Economic Stabilization Act of 1970, as amended, 12 U.S.C.A. § 1904 (1975 Supp.) [incorporated into the Emergency Petroleum Allocation Act of 1973, Pub.L. No. 93–159, 87 Stat. 627 by its Sec. '5(a)(1)]:

"(2) A district court of the United States or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under this title to a person who is a party to litigation before it. Appeals from interlocutory decisions by a district court of the United States under this paragraph may be taken in accordance with the provisions of section 1292(b) of title 28, United States Code [section 1292(b) of Title 28]; except that reference in such section to the courts of appeals shall be deemed to refer to the Temporary Emergency Court of Appeals."

While subdivision (a) of the section thus referred to, upon which the appeals appear premised, provides for appeals as of right from orders granting or denying interlocutory injunctions, subdivision (b) to which the authorization for appeals from such orders are expressly limited by the Economic Stabilization Act as we have seen, reads as follows:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so

---

1. Condor Operating Co. v. Sawhill, 514 F.2d 351(Em.App.1975). "The purported appeal by the defendants from the order in question does not ameliorate the problem. They [the appellants] had no appeal as of right from the interlocutory order [granting a preliminary injunction]; they had obtained from the district court no certification for the usual interlocutory appeal, nor had they filed application with this court for leave to so appeal within the time prescribed by § 211(d)(2) of the Economic Sta-

bilization Act with reference to 28 U.S.C. § 1292(b) . . . ." We held in that case, however, that certification of a constitutional issue by the trial court, not present in the case at bar, invested us with jurisdiction to consider related problems.

2. 39 Fed.Reg. 42246 (Dec. 4, 1974) as amended 39 Fed.Reg. 44710 (Dec. 27, 1974), 40 Fed.Reg. 2559 (Jan. 13, 1975).

state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

To read § 211(d)(2) of the Economic Stabilization Act with reference to our jurisdiction on appeal to mean that appeals from interlocutory orders denying or granting injunctions may be taken "in accordance with the provisions of section 1292(a) . . ." rather than, or in addition to, "the provisions of section 1292(b) . . ." would do violence to the language of our jurisdictional charter. The two subdivisions were designed to reach different subject matters; one does not lend itself to an interpretation that includes the other, for that would "effectively turn 1292 upon its head". Cf. Tidewater Oil Co. v. United States, 409 U.S. 151, 93 S.Ct. 408, 34 L.Ed.2d 375 (1972).

The meaning being so facially clear, to seek qualifications or reversal through contextual implications or legislative history seems somewhat gratuitous. Yet both support acceptance of the plain meaning of the employed language.

When the Economic Stabilization Act of 1970 (Pub.L. No. 91–379) was adopted originally no provisions relating to judicial review were specified. Thus, apart from final judgments, any interlocutory orders that district courts might have granted within the parameters of the Administrative Procedure Act and the Rules of Civil Procedure, were reviewable in courts of appeal under § 1292—if granting or denying a preliminary injunction, by appeal as of right by virtue of its subsection (a); and as to any other interlocutory order upon certification below and within the discretion of the appellate court as permitted by its subsection (b).

Section 211 of the Act, specifically providing for, and regulating, judicial review, was added by the Economic Stabilization Act Amendments of 1971 (Pub.L. No. 92–210). The 1973 amendments to the statutes did not change this section.

The precursor of Section 211 was a bill sent by the President to Congress as a part of a message following the announcement of Phase II to extend and amend the Economic Stabilization Act of 1970. The proposal for the creation of the Temporary Emergency Court of Appeals of the United States was that it should "have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title except that the court shall not have power to issue any interlocutory decree staying or restraining, in whole or in part, any provision of this title, or the effectiveness of any regulation or order issued thereunder." The bill would have provided for the certification of constitutional questions to this court by district courts but would have precluded district courts from granting even permanent injunctions, which would have to be issued by the Temporary Emergency Court of Appeals upon appeal from final declaratory judgments or after hearing in this court upon recommendation of a district judge, or by the Supreme Court.

After holding hearings on the administration bill, the Senate Banking Committee reported a clean bill, S. 2891, which contained the precise language later enacted as Section 211. The explanation contained in the Senate Committee report included the following comments (U.S.Code Cong. & Ad.News 1971, pp. 2292–4):

"The judicial review provision has been written with several important principles in mind: (1) speed and consistency of decisions in cases arising under the Act, (2) avoidance of any breaks or stays in the operation of the Stabilization Program, and (3) relief for particular persons aggrieved by the operation of the program.

. . . . .

"A preliminary limitation is set upon the power of this new court. It may issue, with one exception, no interlocutory or temporary order staying or restraining in whole or in part any provision of the Act or the effectiveness of any regulation or order issued pursuant to the Act. The sole exception is that it may issue a temporary injunction restraining the application of a particular regulation or order to a person who is a party to litigation before it. In all other respects the Temporary Emergency Court of Appeals shall have all the powers of a circuit court of appeals."

The Senate Committee's report also states, inter alia:

"Several subsections are devoted to making explicit, the precise authority and limitations on authority that are being placed on the courts considering cases and controversies arising under this Act and in reviewing the decisions of lower courts in these matters.

· · · · ·

"In order to provide relief for a particular person who may be aggrieved by the operation of this program during the period in which he is attempting to establish his legal position, a district court or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under the Act to a person who is a party to litigation before it. To insure speedy disposition of this matter, an appeal may be taken from the granting of such an injunction from the district court to the Temporary Court of Appeals pursuant to the procedure provided in 28 USC 1292(b) for appealing interlocutory appeals in expedited form."

A floor amendment to the judicial review section was offered by Senator Metcalf and defeated. The amendment, if it had been adopted, among other things, would have permitted review of interlocutory injunctions by the Temporary Emergency Court of Appeals in the usual way they would be reviewable by courts of appeal. As Senator Metcalf expressed it: "In short, it would provide what exists today—those legal rights that are presently operating under the Economic Stabilization Act of 1970." Senator Tower made a statement in which he said that the amendment would pose a serious threat to the program. Senator Sparkman said that he hoped the amendment would not be agreed to "because I think it would break up entirely something that we worked long and hard to achieve." 117 Cong.Rec. 43478-9 (Nov. 30, 1971).

The House version, H.R. 11309 was passed on Dec. 10, 1971. Specifically as to interlocutory appeals it would have provided: "The Temporary Emergency Court of Appeals shall not have the power to issue any interlocutory decree staying or restraining, in whole or in part, any provision of this title or the effectiveness of any regulation or order issued under this title." Permanent injunctions would have been issued "by the Temporary Emergency Court of Appeals upon appeal, or, after hearing, upon recommendation of a United States district court or judge thereof. Such an injunction may also be issued by the United States Supreme Court as provided for by this section."

Because of differences in the House and Senate versions, the proposed amendments were sent to a conference committee which adopted the Senate version. The conference report states in part that "[t]he House bill differed from the Senate bill . . . in that . . . it gave no injunctive authority to the district courts." S.Rep. No. 92–579, 92d Cong., 1st Sess. 20–21 (1971). The conference report was agreed to by both houses and the Act, reflecting the Senate version, was signed into law on Dec. 22, 1971.

The legislative history makes plain at least that alteration of traditional judicial review provisions was intended. And there is nothing to indicate that the specific provisions for review as expressed in the Act were not intended.

In addition to the plain language of the particular subsection under discussion, and the legislative history bearing upon it, the context of the entire section itself demonstrates that the changes reflected in § 211(d)(2) were both intended and carefully considered.

The grant to this court of exclusive jurisdiction over all appeals from district courts of the United States in cases and controversies arising under this title is limited by the phrase, "Except as otherwise provided in this section . . ." (§ 211(b)(2).)

The certification by district courts of constitutional issues is required before this court may reach them except as a part of jurisdiction otherwise granted. Subject to this power of determination upon certification below, ". . . no order of such agency shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." (§ 211(d)(1).)

As noticed above, however, "A district court of the United States or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under this title to a person who is a party to litigation before it", but appeals from such interlocutory decisions by a district court "may be taken in accordance with . . . section 1292(b) . . .." (§ 211(d)(2).) "Except as provided in subsection (d) of this section, no interlocutory or permanent injunction . . . shall be granted by any district court of the United States . . .." (§ 211(e)(1).)

If (d)(2) were to be read as meaning that appeals may be taken in accordance with § 1292(a), there would be a direct contradiction in terms. If the subsection were thought to be merely permissive in this respect, leaving subsection (a) to be utilized as a matter of right anyway, reference to subdivision (b) would indicate some mindless aberration which surely this court should not imply, and

cannot fairly imply for the reasons heretofore discussed and those to be stated later. Equally as insupportable would be to read the reference to subsection (b) as intending to provide: "In addition to the jurisdiction provided by subsection (a) above, the Temporary Emergency Court of Appeals shall have the jurisdiction provided by subsection (b) to review interlocutory orders." The "puzzling" nature of this section which still remains in the view of Exxon if one of these other interpretations is adopted can only be resolved by accepting the plain language of the statute.

Thus, it is clear from (d)(2) in view of all other available guides, that any appeal to this court from an interlocutory order granting or denying a preliminary injunction may be taken only on certification by the district court. Why should this be more strange than certification procedure for reference to this court of interlocutory constitutional questions? If there were an appeal as of right from orders denying preliminary injunctions or restraining orders, the certification of interlocutory constitutional problems would be rather meaningless; all a party seeking an interim review here would have to do would be to request and be refused a restraining order or preliminary injunction. Appeals as of right concerning both interim constitutional problems and interlocutory injunction decisions could well have been thought by Congress to invite delays in the progress of these cases to final judgment in the district court. Our experience has been that district courts have been perhaps overly prone to certify interim constitutional problems to this court. See e. g., Shapp v. Simon, 510 F.2d 379 (Em.App. 1975). There is little reason to suppose that if the requirement of § 211(d)(2) is adhered to substantial questions will not be certified as to rulings on applications for interlocutory injunctions where any reasonable justification appears.

■ Should this not prove correct in every instance, parties still would not be left "at the mercy" of judges who unreasonably refuse to certify pursuant to the

reference of § 211(d)(2), although this possibility has not been thought to constitute any real objection to the existence of discretionary appeals in ordinary context. Subsection (d)(2) itself provides in effect that the Temporary Emergency Court of Appeals, in addition to district courts, may enjoin temporarily the application of a particular regulation or order to a party upon original application here as well as in connection with certified interlocutory appeals from orders of district courts. In Pacific Coast Meat Job. Ass'n, Inc. v. Cost of Living Coun., 481 F.2d 1388 (Em.App.1973), a case cited by Exxon as one at variance with the present interpretation of § 211(d)(2), this court in addition to the usual appeal had before it an original application for an injunction filed with this court which it denied in connection with its reversal of the judgment of the lower court. While the question was not discussed, in our present view we in any event did have jurisdiction of the original application and perhaps pendent jurisdiction of the appeal.

Also relied upon by Exxon as being inconsistent with the *Condor* view of § 211(d)(2) is County of Nassau v. Cost of Living Council, 499 F.2d 1340 (Em. App.1974), and McGuire Shaft & Tunnel Corp. v. Local U. No. 1791, U.M.W., 475 F.2d 1209 (Em.App.1973), cert. denied, 412 U.S. 958, 93 S.Ct. 3008, 37 L.Ed.2d 1009 (1973). In the same connection could have been added League of Vol. Hosp. & H. of N. Y. v. Local 1199, Drug & H. U., 490 F.2d 1398 (Em.App.1973). It is true that a threshold question of jurisdiction was considered in *County of Nassau*, but this was made to depend solely upon whether there was any distinction under the circumstances between temporary restraining orders and preliminary injunctions; insofar as the opinion discloses the problem with which we are confronted here was neither presented nor ruled upon. *McGuire Shaft & Tunnel Corp.* did not involve a

§ 211 situation at all, but turned upon § 210(a), since relief was sought for violation of administrative orders, not against their application or operation, this court stating (475 F.2d at 1214):

"Clearly, the limitations on the federal courts' authority to enjoin agencies of the government in the execution of the act, orders, and regulations thereunder were not considered synonymous with the right of an individual injured by violations of the program to enjoin those violations."

*League of Voluntary Hospitals* did not consider the problem either. But the latter decision underscores the dichotomy, if not paradox, which is presented by an interlocutory appeal as of right from an order granting or denying a preliminary injunction through which constitutional issues can be adjudicated here, and the requirement of certification to this court of constitutional issues as a condition for interlocutory review.

■ We no longer can delay directly facing up to the jurisdictional problem recognized but determined only in passing in *Condor*. Not only do we have a continuing duty to inquire into our jurisdiction as such, but we should be punctilious also in assuring ourselves that safeguards established by Congress against excessive interlocutory demands upon us to the undue delay of final decision below are not disregarded.

■ If, as the parties claim, every refusal of a preliminary injunction as well as every such interlocutory injunction can be appealed as of right by any party irrespective of the trial court's conviction that appeal would be frivolous or would not advance the final determination of the cause and thus should not be certified to this court, a pattern for substantial delay of final determination in almost every such case would be engrained into the law contrary to the expressed intent of Congress.[3] Moreover, such un-

---

**3.** Tidewater Oil Co. v. United States, 409 U.S. 151, 93 S.Ct. 408, 34 L.Ed.2d 375 (1972), construing in different context § 1292(b) as per-taining to orders other than those granting or denying preliminary injunctions is not inconsistent in the present entirely dissimilar con-

certified appeals, which usually involve constitutional attacks, in effect would wash out any significance of § 211(c) concerning the certification of interlocutory constitutional issues. The interruption of proceedings in district courts by appeals of right from all of such interlocutory orders, which are customarily sought in the first instance, is a prospect which the Congress did not have to invite, whether wise or unwise. Such appeals however unmeritorious are always time consuming, not infrequently premature and often present problems which could be better considered by us following development of a more adequate record by the trial courts.

■■■■ There, indeed, may be much to commend the Congressional plan in preference to such a system for unlimited appeal of orders granting or denying preliminary injunctions. Groundless interlocutory appeals under the Act may be screened by the district court beneficially in the first instance, as in the case of the review of constitutional problems. Improvident interlocutory appeals should not be encouraged. If the granting of preliminary relief against application of a regulation or order is improperly refused and the matter is deemed of sufficient importance, our jurisdiction may be invoked by an original application which we can reject without interruption of the proceedings below, or grant if a sufficient showing is made to warrant this action. Should the district court refuse to certify an interlocutory appeal from an order granting an injunction, the case in all probability better could proceed to final determination below anyway unless this court is convinced upon a clear showing of the absence of legal foundation that prohibition, or other extraordinary remedy should issue.

If the granting of such preliminary injunction is within the discretion of the trial court and thus not amenable to extraordinary relief here, the probability of our overruling the exercise of that discretion even on interlocutory appeal could be minimal. But irrespective of whether the system mandated by Congress is the best one, we are bound to give it effect, no constitutional obstacle appearing.

The appeals are hereby dismissed for lack of jurisdiction in this court.

HASTINGS, Judge (dissenting).

The statement in Section 211(d)(2) of the Economic Stabilization Act, 12 U.S.C. § 1904 note, that appeals from decisions of district courts respecting injunctions "may be taken in accordance with the provisions of section 1292(b) of title 28, United States Code . . .," presents this court with a difficult question of interpretation. There seem to be two possible interpretations of the provision. Either the mention of § 1292(b) precludes appeals pursuant to § 1292(a)(1), or the latter provision remains available. The two interpretations are each, at least in some respect, unsatisfactory. In light of the congressional policy behind the judicial review provisions of the Economic Stabilization Act, I find the majority's view that § 1292(a)(1) review is precluded the far less satisfactory interpretation and I therefore dissent.

The majority holds that it was the intent of Congress to limit the appellate jurisdiction of the Temporary Emergency Court of Appeals over orders granting or denying preliminary injunctions to those which have been certified by the district court under 28 U.S.C. § 1292(b). A complete review of the legislative history of the Act reveals only a single

text with its applicability to the latter orders in view of the express provisions of the Economic Stabilization Act. It seems quite clear in the present context that when Congress expressly stated in a single subsection that a "district court . . . may enjoin temporarily . . . the application of a particular regulation or order . . ." and that "[a]ppeals from interlocutory decisions by a

district court . . . under this paragraph may be taken in accordance with the provisions of section 1292(b) . . .", it did not mean that such appeals could not be taken by virtue of subsection (b) if the order was one "enjoined [ing] temporarily . . . the application of a particular regulation or order. . . ."

mention of 28 U.S.C. § 1292(b) in all of the committee reports and debates on the floor of the House and Senate. That single sentence, in the Senate committee report, does little more than restate the language of the statute:

> To insure speedy disposition of this matter, an appeal may be taken from the granting of such an injunction from the district court to the Temporary Emergency Court of Appeals pursuant to the procedure provided in 28 USC 1292(b) for appealing interlocutory appeals in expedited form. S.Rep. No. 92–507, 92d Cong., 1st Sess. 12 (1971); U.S.Code Cong. & Ad.News, p. 2294 (1971).

I cannot join the majority's conclusion that any decision to limit review to the provisions of § 1292(b) was "both intended and carefully considered."

If Congress had in fact intended to restrict review of orders concerning injunctions to those certified by the district court, any careful consideration of the language of § 1292(b) and the cases which have interpreted it would have revealed that § 1292 would not be an appropriate vehicle to "insure speedy disposition" of orders respecting preliminary injunctions.

The Supreme Court in Tidewater Oil Co. v. United States, 409 U.S. 151, 93 S.Ct. 408, 34 L.Ed.2d 375 (1972), concluded that the statute's legislative history demonstrated "that § 1292(b) was intended to establish jurisdiction in the courts of appeals to review interlocutory orders, other than those specified in § 1292(a), in civil cases in which they would have jurisdiction were the judgments final." *Id.* at 168, 93 S.Ct. at 418 (footnote omitted). The Court further stated that "§ 1292(b) was intended to supplement § 1292(a), not to provide a substitute for it." *Id.* at 168 n. 41, 93 S.Ct. at 418. The Court went on to consider, in dicta, the possible usefulness of § 1292(b) in securing review of orders concerning preliminary injunctions in a class of cases where resort to § 1292(a) was precluded. The Court said, "[T]he

fact is that permitting interlocutory appeal under § 1292(b) would not bring these orders and the related evidence before the courts of appeals since they come within § 1292(a)(1)." *Id.* at 172 n. 47, 93 S.Ct. at 420. The implication of this observation for our jurisdictional question is clear. If, as the majority holds, § 211(d)(2) of the Economic Stabilization Act prevents use of § 1292(a)(1) to appeal orders granting or denying preliminary injunctions, then the certification procedure of § 1292(b) could not be used to appeal such orders either.

The Supreme Court's observation was based on careful consideration of legislative history. The Court's analysis is persuasive and should be followed here. But even if we were to reject as dicta the Supreme Court's conclusion that § 1292(b) is wholly unavailable to review a preliminary injunction decision, § 1292(b), if available, would be a very awkward and inappropriate mechanism for such review.

The language of 28 U.S.C. § 1292(b) only makes sense if it supplements review as of right from orders concerning preliminary injunctions rather than supplants it. The section begins "when a district judge, in making in a civil action an order not otherwise appealable under this section . . . ." Since § 1292(a)(1) permits review of injunctive orders, by its own terms, the procedures of § 1292(b) are not to be applied to appeals from injunctions.

The standards for certification under § 1292(b) were not designed to be and are not suitable for application to preliminary injunctions. Section 1292(b) requires a "controlling question of law," but the controlling issues in a preliminary injunction proceeding are in large part factual, such as whether there is irreparable harm to the plaintiff, whether harm to the defendant if an injunction is granted would outweigh benefit to the plaintiff, and whether an injunction would serve the public interest. There is substantial precedent supporting the view that § 1292(b) certification is inappropriate in matters that lie with-

in the discretion of the district court,[1] but the issuance of a preliminary injunction is "committed to the sound judicial discretion of the trial court." League of Voluntary Hospitals v. Local 1199, Drug & Hospital Union, 490 F.2d 1398, 1401 (Em.App.1973).

While the legislative history of the Economic Stabilization Act fails to demonstrate a clear intent to restrict review of decisions about preliminary injunctions to the procedures of § 1292(b), it does contain a detailed statement of the congressional policies which the judicial review provisions were designed to implement:

> The judicial review provision has been written with several important principles in mind: (1) speed and consistency of decisions in cases arising under the Act, (2) avoidance of any breaks or stays in the operation of the Stabilization Program, and (3) relief for particular persons aggrieved by the operation of the program. S.Rep. No. 92–507, 92d Cong., 1st Sess. 10 (1971); U.S.Code Cong. & Ad.News, p. 2292 (1971).

Limiting appeals from orders concerning preliminary injunctions to those certified pursuant to § 1292(b) would be likely to produce delay and inconsistency rather than further the legislative intent. Considering the inapplicability of the requirements for a certification under § 1292(b) to preliminary injunction questions, a district court would often be correct in refusing to certify its order for appellate review. As a result, district court orders inconsistent with decisions of the Temporary Emergency Court of Appeals could remain in effect for substantial periods of time. While a party who had been denied preliminary relief in the district court could petition our court directly for an injunction, the party aggrieved by the issuance of an injunction by the district court would have no such alternative available. Thus, the situation Congress most feared, of injunctions creating breaks or stays in the program, is furthered by limiting review to § 1292(b).

The general design of the jurisdictional review provisions of the Economic Stabilization Act is to limit the relative authority of the district courts and to concentrate authority in our court. Limiting review of injunction orders to those properly certified under § 1292(b) would make district courts in cases arising under the Economic Stabilization and Emergency Petroleum Allocation Acts more powerful than they would be in other cases and our court less powerful than other courts of appeals. The district courts would have what the Supreme Court has described as "virtually unlimited authority over the parties in an injunctive proceeding." Sampson v. Murray, 415 U.S. 61, 87, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974).

The holding of the majority here that § 1292(b) is the only avenue of appeal for orders respecting preliminary injunctions is not only inconsistent with the well-developed interpretation of § 1292(b) and the legislative policies behind the Economic Stabilization Act, but it is also inconsistent with the prior uniform practice of our court in hearing appeals from preliminary injunction decisions without requiring a § 1292(b) certification.

In Pacific Coast Meat Jobbers Ass'n v. Cost of Living Council, 481 F.2d 1388 (Em.App.1973), our court heard and decided an appeal by private parties which had been denied a preliminary injunction. While the court also had before it an original application for a preliminary injunction, the opinion of the court leaves no question that it was deciding both the preliminary application and the appeal. In League of Voluntary Hospitals, supra, the court stated that the case before it was "an appeal, pursuant to Section 211 of the Economic Stabilization Act" from an order granting a preliminary injunction, yet the court did not

---

1. 9 Moore's Federal Practice ¶ 110.22[2] at 261 (2d ed. 1973); C. Wright, Law of Federal Courts § 102 at 463 (2d ed. 1970). *But see*

Katz v. Carte Blanche Corp., 3 Cir., 496 F.2d 747, 752–756, cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

find it necessary to discuss any possible jurisdictional obstacles to its hearing the case.

In County of Nassau v. Cost of Living Council, 499 F.2d 1340 (Em.App.1974), our court heard appeals by a government agency from a series of decisions of a district court granting among other relief, a temporary restraining order. In *County of Nassau* the jurisdictional question was explicitly considered. The court said:

> At the threshold a question arises whether the temporary restraining order against the COLC's temporary order is appealable. We hold that it is appealable under the rationale of Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (decided Feb. 19, 1974) . . . . 499 F.2d at 1343.

In Sampson v. Murray, the Supreme Court held that a temporary restraining order would be considered as a preliminary injunction so that review under 28 U.S.C. § 1292(a)(1) would be available. The Court reasoned:

> A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding. 415 U.S. at 86–87, 94 S.Ct. at 951.

Since *Sampson* was an interpretation of § 1292(a)(1), our court's reliance upon that case is an implicit holding that the provisions of 28 U.S.C. § 1292(a)(1) permit our court to hear appeals from decisions concerning preliminary injunctions without a certification.

In light of this precedent, the inutility of § 1292(b) in reviewing preliminary injunction orders and the legislative policies behind the judicial review provisions of the Economic Stabilization Act, I would hold that § 211(d)(2) of the Act does not preclude this court's jurisdiction over appeals pursuant to 28 U.S.C. § 1292(a)(1). While I recognize that this holding would render the reference to § 1292(b) in § 211(d)(2) superfluous, I believe it achieves a far more satisfactory result than the holding of the majority.