Robert William SPINETTI et al., Plaintiffs-Appellants,

v.

ATLANTIC RICHFIELD COMPANY, Defendant-Appellee.

Nos. 9–20 and 9–21.

Temporary Emergency Court of Appeals.

Aug. 18, 1975.

Francis O. Scarpulla, San Francisco, Cal., with whom Josef D. Cooper and Linda L. Tedeschi, Cooper & Scarpulla, San Francisco, Cal., were on the brief for plaintiffs-appellants.

F. Bruce Dodge, San Francisco, Cal., with whom Kenneth R. Clegg, Morrison & Foerster, San Francisco, Cal., were on the brief for defendant-appellee.

Before CARTER, CHRISTENSEN and ESTES, Judges.

ESTES, Judge.

These consolidated appeals by the original plaintiff, Robert W. Spinetti, and by plaintiffs Douglas Hughes, W. G. Zandell, and Gordon H. Wallace, who were added as parties plaintiff in the Plaintiffs' Amended Complaint filed Feb. 28, 1975, are from orders of the United States District Court for the Northern District of California denying plaintiffs' motions for preliminary injunctions against the defendant, Atlantic Richfield Company (ARCO), restraining the alleged termination of certain Commission Distributor Agreements between each of the plaintiffs individually, and the defendant, and the closing of certain bulk plant facilities owned by ARCO and which were used and maintained by each of the plaintiffs.

The plaintiffs alleged, *inter alia*, that on specified dates they respectively entered into agreements with the defendant, ARCO, for the distribution of petroleum products in specific areas of California and Oregon. Their original and amended complaints contained several counts, the first of which charged antitrust violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18, and sought relief under Section 4 of the Clayton Act, 15 U.S.C. § 15, and under the injunctive provisions of Section 16 of the Clayton Act, 15 U.S.C. § 26. The second count alleged violation of the Fair Trade laws of California. Count three alleged that "[t]he termination of the contract between plaintiff and defendant is a violation of the rules

and regulations of the oil allocation program and other federal regulatory statutes and rules to which (sic), Sections 205.190–195, 205.200–203, 210.62, *et seq.*, 211.9, *et seq.*, and 212.83, *et seq.*, of the Petroleum Allocation and Price Regulations of the Federal Energy Office." In supplemental memorandums filed in the District Court in support of their motions for preliminary injunctions, plaintiffs more specifically alleged that the termination of their distributor agreements with ARCO was a violation of 10 CFR § 211.9, which requires, prior to the termination of a supplier-wholesale-purchaser-reseller relationship, the approval of the Federal Energy Administration (F.E.A.).[1] Plaintiffs also alleged that the closure of the bulk plants used by them would effect certain changes in the normal business practices of ARCO, in violation of 10 CFR § 210.62. The consequence of both actions by ARCO was also alleged to be a violation of 10 CFR § 210.62 by reason of the effect on their customers. Count four, added by the Amended Complaint, charged the defendant with inducing plaintiffs Hughes, Zandell, and Wallace to make substantial investments on the basis that their distributor agreements would not be canceled in the absence of breach by them.

Spinetti's motion for a preliminary injunction, filed February 14, 1975, was denied by the district court on March 6, 1975, and a notice of appeal therefrom was filed in this court on March 13, 1975. On March 31, 1975, the district court denied preliminary injunctive relief to plaintiffs Hughes, Zandell, and Wallace on their motion of March 7, 1975. Notice of appeal was filed by these plaintiffs with this court on April 11, 1975.

■■ Plaintiffs made no allegation of jurisdiction under the Emergency Petroleum Allocation Act of 1973, Pub.L. No. 93–159, 87 Stat. 627 (Allocation Act), in their complaints in the District Court or

on this appeal. The Temporary Emergency Court of Appeals (T.E.C.A.) has no jurisdiction, under the judicial review provisions of the Economic Stabilization Act of 1970, Pub.L. No. 91–379, 84 Stat. 799, as amended, (ESA) 12 U.S.C. § 1904 note, [incorporated into the Allocation Act by § 5(a)(1) thereof], of counts I, II, and IV of the plaintiffs' complaint since such claims are not controversies arising under any title of the Economic Stabilization Act or the Allocation Act or under regulations or orders issued thereunder. The antitrust, Fair Trade, and contractual claims are appealable only to the Ninth Circuit Court of Appeals under 28 U.S.C. § 1291. *Cf. Associated Gen. Con., Okl. Div. v. Laborers Int. U., Loc. 612,* 489 F.2d 749, 751 (Em.App.1974). As stated in *United States v. Cooper,* 482 F.2d 1393, 1398 (Em.App.1973): "[C]ourts of special jurisdiction should strictly construe their statutory grants of jurisdiction." Accord, *United States v. State of California,* 504 F.2d 750, 754 (Em.App.1974), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2423, 44 L.Ed.2d 684 (1975).

Following the decisions of *Exxon v. FEA,* 516 F.2d 1397, 3 CCH Energy Management ¶ 26,019, at p. 26,171 (T.E. C.A.1975), and *Gulf Oil Corp. v. FEA,* 521 F.2d 810 (Em.App.1975), this court directed the parties herein to file supplemental briefs on two questions: the question of this court's jurisdiction under section 210(a) of the ESA to review on appeal the order of the district court denying preliminary injunctive relief in this case, and the effect of the non-joinder of the FEA where its regulations and their interpretation are in controversy. The appellants contend that jurisdiction is present in this case by virtue of their reliance upon section 210(a) rather than section 211 and the absence of any non-private parties; or in the alternative, that their appeal should be construed as an original application for a

1. Under section 5(a) of Executive Order No. 11790, (39 F.R. 23,185, June 25, 1974) Providing for the Effectuation of the Federal Energy Administration Act of 1974, (Pub.L. No. 93–275), the Federal Energy Office was abolished on June 27, 1974, the effective date of the Act, and its functions were continued under the Federal Energy Administration.

preliminary injunction under section 211(e)(2).

This court must initially indicate that the appellants were not "aggrieved by a declaration of a district court of the United States *respecting the validity* of any regulation or order issued under this title" [emphasis added] within the meaning of section 211(e)(2); and assuming, *arguendo*, such was the case, no motion for injunctive relief was filed by appellants in this court within the requisite 30-day period of section 211(e)(2). In *Pacific Coast Meat Job. Ass'n, Inc. v. Cost of Living Coun.*, 481 F.2d 1388 (T.E. C.A.1973), this court considered an original application for preliminary injunctive relief; however, there it was filed two days after the district court declared valid the Cost of Living Council's Special Price Rules for Food, which maintained the price ceiling on beef while lifting the ceiling for most other meats. Moreover, no proper application for injunctive relief supported by the necessary papers and motions was made in this court. The appellants' alternative contention for jurisdiction as an original application for injunctive relief under section 211(e)(2), is rejected.

Thus, to be heard on the merits of their appeal, appellants must show that as private parties, they are entitled, in a suit brought under section 210(a) against another private party, to appeal as a matter of right under 28 U.S.C. § 1292(a) from the denial of preliminary injunctive relief by the court below. In *Exxon v. FEA, supra,* this court made a comprehensive analysis of the legislative history of the provisions for judicial review provided to parties involved in actions arising under the ESA and the Allocation Act. This court there concluded "that any appeal to this court from an interlocutory order granting or denying a preliminary injunction may be taken only on certification [under 28 U.S.C. § 1292(b)] by the district court." (3 CCH Energy Management at p. 26,175.) Following the *Exxon, supra,* decision, this court dismissed an appeal from an order denying a preliminary injunction in a similar action brought by Gulf Oil Corporation, for lack of jurisdiction, stating that: "[S]ection 211(d)(2) of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note, which defines our appellate jurisdiction, does not permit an appeal of right to this court from an order granting or denying a preliminary injunction." *Gulf Oil Corp. v. FEA,* 521 F.2d 810 (Em.App.1975).

While these precedents seem clear, the appellants' misconceptions regarding our jurisdiction on review of interlocutory injunctive decrees of district courts in private actions warrants further discussion. Appellants would contend that a section 1292(b) certification is required only in a government action. In so doing they rely upon an artificial separation of the subdivisions of section 211 to show that government appeals may be taken only under section 211(d)(2), while private appeals may be taken under sections 211(b)(2) and (e)(2). Section 210(a) states that "Any person suffering legal *wrong* because *of any act or practice* arising out of this title . . . may bring an action in a district court of the United States . . ., including . . . an action for a . . . writ of injunction (*subject to the limitations in section 211*)." [emphasis added]. Whether the application is submitted by the agency to enforce a regulation or by a private party attacking the regulation is a matter of no substantial difference. In either case the regulation itself is under consideration. The posture of the case having been commenced by a private party or the agency is a difference without meaning. Nor does any attempted differentiation between mandatory injunctions and prohibitory injunctions furnish a basis for our appellate jurisdiction in disregard of section 211. If the appellants' theory were correct, the parenthetical phrase in section 210(a) would be completely meaningless, as section 211(b)(2) and section 211(e)(2) contain no limitations on the granting of injunctions. In fact, section 211(e)(2) expands the availability of injunctive relief under the Allocation Act by granting this court origi-

nal jurisdiction to consider such relief under certain specified circumstances.

Appellants would further rely on this court's statement in *McGuire Shaft & Tunnel Corp. v. Local U. No. 1791, U. M. W.*, 475 F.2d 1209, 1213 (Em.App.1973), that:

> "The restrictions in § 211 are directed at limiting the power of the judiciary to impede the enforcement, operation, or execution of the Economic Stabilization Program. Since the cases *sub judice* are not concerned with enjoining the implementation of the stabilization program, but rather with enjoining violations thereof, the provisions of § 211 are inapplicable."

However, this statement was made in the context of interpreting the authority of a district court *ab initio* to issue injunctions against violations of the ESA on behalf of private parties. The legislative history of section 210(a) and section 211 of the ESA was there considered only as it pertained to the intent of Congress to provide individuals with the right to bring an action for injunctive relief. The question of this court's jurisdiction over the appeal by the defendants therein from the district court's granting of injunctive relief was not raised. Interpreting the legislative intent behind section 211 as it pertains to our jurisdiction to review appeals from interlocutory decisions in the district courts, this court in *Exxon, supra*, stated:

> "Appeals as of right concerning both interim constitutional problems and interlocutory injunction decisions could well have been thought by Congress to

invite delays in the progress of these cases to final judgment in the district court. . . . The interruption of proceedings in district courts by appeals of right from all of such interlocutory orders, which are customarily sought in the first instance, is a prospect which the Congress did not have to invite, whether wise or unwise. Such appeals however unmeritorious are always time consuming, not infrequently premature and often present problems which could be better considered by us following development of a more adequate record by the trial courts." (3 CCH Energy Management at pp. 26,175–176).

With the *Exxon, supra*, decision before us, and the language of section 211(b)(1) of the Act mandating that this court "exercise its powers and prescribe rules governing its procedure in such manner as to expedite the determination of cases over which it has jurisdiction under this title" there appears no compelling distinction between an appeal by an individual and that by the government which would warrant a decision contrary to that expressed in *Exxon, supra*, and *Gulf, supra*.

We do not reach the question as to whether or not the F.E.A. should have been joined as a party to this action. But see *Associated Gen. Con. of A., Inc., Okl., etc. v. Laborers Int. U.*, 476 F.2d 1388, 1405–1407 (Em.App.1973) and *Air Products & Chemicals, Inc. v. United Gas Pipe Line Co.*, 503 F.2d 1060, 1062 (Em. App.1974).

This appeal is therefore, ordered dismissed and the case is remanded to the district court for proceedings not inconsistent with this decision.